UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HOWARD C. TIMBERLAKE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:11-CV-10 RLM |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant | ) | |

OPINION and ORDER

Howard Timberlake seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons that follow, the court reverses and remands this case to the Social Security Administration for further proceedings consistent with this opinion.

I. BACKGROUND

Mr. Timberlake filed his initial application for disability benefits in July 2007 based on complaints of sarcoidosis, panic attacks, and bulging discs in his back, with an onset date of February 28, 2003; his application was denied initially and on reconsideration. Mr. Timberlake then requested an administrative hearing, which was held on February 2, 2010 before Administrative Law Judge Michelle

Lindsay, who heard testimony from Mr. Timberlake, who was represented by counsel, and Dr. Leonard Fisher, a vocational expert. The ALJ issued her written decision on March 19, 2010 following the standard five-step sequential evaluation used in these matters, *see* 20 C.F.R. § 404.1520(a), and found that Mr. Timberlake's sarcoidosis limited the types of environment he could work in; his lumbar degenerative disc disease affected his ability to lift, carry, push, and pull heavy items; his anxiety disorder moderately limited his ability to concentrate and interact with others; he had been treated for deep venous thrombosis of a lower extremity; his methicillin resistant staphylococcus aureus infection was severe but not continuous; and his high blood pressure was under control and not severe. The ALJ ultimately concluded Mr. Timberlake didn't have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ found Mr. Timberlake's testimony about his breathing difficulties to be credible and supported by the evidence, but concluded that his testimony about the extent of his sitting, standing, and walking limitations wasn't supported by medical evidence. The ALJ also found Mr. Timberlake's testimony about the extent of his anxiety-related limitations to be inconsistent with testimony by his sister and girlfriend, both of whom said he could perform simple repetitive tasks, keep and arrive on time for appointments, watch television, and maintain

attention and participate in conversations. The ALJ concluded the overall record supported a finding that Mr. Timberlake had the residual functional capacity to perform light work with restrictions. The vocational expert testified that based on Mr. Timberlake's age, education, work experience, and residual functional capacity, he would be able to perform the requirements of light work, such as that of a mail clerk, office helper, and parking lot attendant.

The ALJ's decision of "not disabled" became the final decision of the Commissioner of Social Security when the Appeals Council denied Mr. Timberlake's request for review on November 5, 2010. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed; the court has jurisdiction under 42 U.S.C. § 405(g).

Mr. Timberlake challenges the ALJ's decision that he isn't disabled, arguing that the ALJ (i) improperly concluded that none of his impairments, individually or taken in combination, meet or medically equal one of the impairments listed at 20 C.F.R. Pt. 404, Subtpt. P, App. 1, (ii) erred in assessing his residual functional capacity, and (iii) improperly concluded he could perform jobs that exceed his mental residual functional capacity. The parties' arguments and a review of the record in this case convinces the court that the ALJ's failure to consider all the relevant evidence in determining whether Mr. Timberlake's spinal disorder meets an impairment listing constitutes reversible error.

## II. Standard of Review

The court must affirm the Commissioner's determination if it is supported by substantial evidence, 42 U.S.C. § 405(g); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011), which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The court can't re-weigh the evidence, make independent findings of fact, decide questions of credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009), but in reviewing the ALJ's conclusions, "[t]he court will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ isn't required "to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010).

## III. DISCUSSION

When a claimant alleges disability, Social Security regulations provide the following five-step inquiry to use in evaluating whether the claimant is entitled to benefits: (1) Is the claimant engaged in substantial gainful activity? If so, the claimant isn't disabled, and the claim is denied; if not, the inquiry proceeds to step 2. (2) Does the claimant have an impairment or combination of impairments that are severe? If not the claimant is not disabled, and the claim is denied; if so, the inquiry proceeds to step 3. (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, the inquiry proceeds to step 4. (4) Can the claimant do his or her past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step 5. (5) Can the claimant perform other work given his or her residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also* <u>Scheck v. Barnhart</u>, 357 F.3d 697, 699-700 (7th Cir. 2004).

Mr. Timberlake argues that the ALJ erred at step 3 by concluding that although his lumbar degenerative disc disease was severe, it didn't meet or medically equal Listing 1.04(A), 20 C.F.R. Pt. 404, Subpt. P, App.1 § 1.04, the listing that addresses disorders of the spine. To meet the requirements of a

Listing, the applicant must satisfy all of the criteria in that Listing. Pope v. Shalala, 998 F.2d 473, 480 (7th Cir. 1993) (*citing* Sullivan v. Zebley, 493 U.S. 521, 530 (1990)). Listing 1.04(A) provides that a claimant's spine disorder must be accompanied by:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A). The ALJ concluded Mr. Timberlake didn't meet the criteria of Listing 1.04(A) because "[a]lthough there is diagnostic evidence of lumbar spinal stenosis, there is no evidence of compromise of a nerve root or the spinal cord. Nor is there any evidence of pseudoclaudication."[1] Rec., at 79. Mr. Timberlake disagrees, pointing to the results of a December 19, 2006 MRI of his lumbar spine that revealed "suspected impingement" on exiting nerve root fibers, Rec., at 350, as well as a report from September 2007 in which a physician found "evidence of impingement of the right L5 nerve root." Rec., at 372. The ALJ didn't address those findings.

An ALJ needn't set forth a written evaluation of every piece of evidence, but she must "articulate at some minimal level [her] analysis of the evidence" and base her decision "upon consideration of all the relevant evidence." Herron v. Shalala,

---

[1] While psuedoclaudication is required to meet the criteria for Listing 1.04C, 20 C.F.R. pt. 404, subpt. P, app. 1, because Listing 1.04 uses the disjunctive word "or" between its subsections, a finding of psuedoclaudication is not required to meet the criteria for Listing 1.04A.

19 F.3d 329, 333 (7th Cir. 1994). The ALJ didn't do so here. Her bare conclusion that "there is no evidence of compromise of a nerve root or the spinal cord" is in direct conflict with evidence in the record, and she made no attempt to address that contrary evidence or explain why she was rejecting it. The ALJ might have discredited the evidence in making her conclusion, but, if so, she needed to make that clear in her opinion.

The Commissioner contends that "[t]he ALJ's failure to mention those two speculative statements was . . . at most, harmless error" because Mr. Timberlake failed to demonstrate that he met all the other required criteria of the listing. Resp. Br., at 9. The court disagrees.

"The doctrine of harmless error is indeed applicable to judicial review of administrative decisions." Spiva v. Astrue, 628 F.3d 346, 353 (7th Cir. 2010). The doctrine, however, is to be relied upon only "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand." Id. No such conclusion can be made in this case. Significant issues still remain as to whether Mr. Timberlake meets the required criteria in Listing 1.04(A). For example, Mr. Timberlake points out that a physician's diagnosis of "lumbar back pain with radiculopathy" constitutes "evidence of neuro-anatomic distribution of pain." Pltf. Br., at 6 (citing Rec., at 10). Additionally, evidence in the record supports at least a plausible claim that Mr. Timberlake suffered motor loss as a result of his back pain. *See* Rec., at 370-371. And while the Commissioner tries to refute these and

other points, the court's role isn't to reweigh or resolve conflicts in the evidence. McKinzey v. Astrue, 641 F.3d 884, 889 (7th Cir. 2011). The Commissioner's argument that had the ALJ considered all of the evidence, she might have reached the same result "does not prove that her failure to do so was harmless." Spiva v. Astrue, 628 F.3d at 353. To the contrary, "[h]ad she considered it carefully, she might well have reached a different conclusion." Id.


IV. CONCLUSION

Had the ALJ elaborated her reasons for concluding that Mr. Timberlake failed to meet the remaining criteria for Listing 1.04(A), the court might have been inclined to determine whether her conclusion about his nerve root damage constituted harmless error. Instead, the ALJ offered only a summary statement that there was no nerve root damage without addressing contradictory evidence and without analyzing the remaining criteria, which constituted reversible error. Accordingly, the Secretary's decision is REVERSED and the case is REMANDED to the Social Security Administration with instructions to conduct further proceedings consistent with this opinion.

SO ORDERED.

ENTERED:   September 11, 2012

 /s/ Robert L. Miller, Jr.
Judge, United States District Court